UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Edwin and Louise Hunt,
        Plaintiffs

        v.                                  Case No. 18-cv-343-SM
                                            Opinion No. 2019 DNH 105
Target Corporation,
        Defendant

# O R D E R

Edwin and Louise Hunt bring two common law claims against

Target Corporation, seeking compensation for injuries sustained

as a result of Target's alleged negligence.  Specifically, they

claim that Target negligently maintained property adjacent to

one of its stores by failing to properly remove accumulated ice

and snow.  While Mr. Hunt was making a delivery to that store,

he stepped out of his truck, slipped on that accumulated ice,

and severely injured his back, right hip, and knee.  Louise Hunt

seeks compensation for loss of consortium.

Target moves for summary judgment, advancing two arguments.

First, it says the property on which Mr. Hunt was injured is

Limited Common Area of the Monadnock Condominium and, therefore,

not part of Target's condominium unit.  In simple terms, Target

says it is not the owner of the property on which Mr. Hunt was

injured and, therefore, owed no duty of care to him. Next, says Target, even if it did owe some duty to Mr. Hunt to ensure the area was clear of snow and ice, there is no evidence to support plaintiffs' claim that Target breached that duty. So, Target argues, it is entitled to judgment as a matter of law on both of plaintiffs' claims. Plaintiffs object.

For the reasons discussed, Target's motion for summary judgment is granted

**Standard of Review**

When ruling on a motion for summary judgment, the court is "obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." Block Island Fishing, Inc. v. Rogers, 844 F.3d 358, 360 (1st Cir. 2016) (citation omitted). Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, a factual dispute "is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party, and 'material' if its existence or nonexistence has the potential to change the outcome of the suit." Rando v. Leonard, 826 F.3d 553, 556 (1st Cir. 2016) (citation omitted).

2

Consequently, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact." Perez v. Lorraine Enters., 769 F.3d 23, 29-30 (1st Cir. 2014). In other words, "a laundry list of possibilities and hypotheticals" and "[s]peculation about mere possibilities, without more, is not enough to stave off summary judgment." Tobin v. Fed. Express Corp., 775 F.3d 448, 451-52 (1st Cir. 2014). See generally Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

**Background**

Target is the owner of Unit 5 in the Monadnock Condominium, on which it constructed one of its stores. That store is located in a shopping center known as Monadnock Marketplace, in Keene, New Hampshire. According to plaintiffs' complaint,

> On February 22, 2015, Mr. Hunt was making a delivery to the Target store in Keene, New Hampshire. He was walking around his work truck to drop and hook a Target trailer of merchandise when he slipped and fell on ice that had accumulated in the docking area resulting in severe injuries to his back, right hip, and knee.

Complaint (document no. 1-1) at para. 5. At his deposition, Mr. Hunt testified that, on the date of his accident, he arrived at

3

the Target store around midnight.  Deposition of Edwin Hunt (document no. 13-8) 50.  He backed up his truck to the elevated loading dock at the rear of Target's store, "got out of the truck, and walked around the front."  Id. at 66.  He then slipped and fell on some ice "around the front of [the] tractor."  Id.

The property on which Mr. Hunt fell is a concrete pad on which delivery trucks park, see id. at 80, immediately adjacent to Target's elevated loading dock.  The preliminary (and potentially dispositive) question presented by Target's motion for summary judgment is this: who owns that concrete pad on which Mr. Hunt was injured?  Plaintiffs assert that Target owns that property or, at a minimum, is obligated by the relevant condominium documents to maintain that property in a safe condition.  Target, on the other hand, asserts that the area where Mr. Hunt was injured is Limited Common Area, which is owned in common by all unit owners, and is maintained by the Monadnock Condominium Unit Owners' Association.

**Discussion**

I.   New Hampshire's Condominium Act.

Under New Hampshire's Condominium Act, N.H. Rev. Stat. Ann. ("RSA") chapter 356-B, all unit owners in a condominium share an

4

undivided ownership interest in the "common areas." RSA 356-B:3. "Common areas" are defined as "all portions of the condominium other than the units." Id. "Limited Common Area" is a subset of the Common Area which, although owned in common by all unit owners, is "reserved for the exclusive use of those entitled to the use of one or more, but less than all, of the units." Id. The Condominium Act allocates maintenance and repair responsibilities for units and Common Area (including Limited Common Area) as follows:

> Except to the extent otherwise provided by the condominium instruments, all powers and responsibilities with regard to maintenance, repair, renovation, restoration, and replacement of the condominium shall belong (a) to the unit owners' association in the case of the common areas, and (b) to the individual unit owner in the case of any unit or any part thereof.

RSA § 356-B:41 (emphasis supplied).

II. The Monadnock Condominium.

In the Monadnock Condominium, "units" are parcels of land, rather than physical structures. After purchasing a unit, the owner constructs its building(s) within the bounds of that unit. The unit owner is then responsible for maintenance and repair of everything located within the defined boundaries of its unit. Common Area (and designated Limited Common Area) is all land

that has been dedicated to the condominium that falls outside the metes and bounds descriptions of the units. Here, Target bought the land described as Unit 5 and then constructed its store on that land.

Consistent with the provisions of New Hampshire's Condominium Act, The Declaration of Monadnock Condominium provides that: "The Unit Owner's Association shall maintain, repair and replace the Common Area, including Limited Common Area, in a sightly, safe condition and good state of repair and shall, in the first instance, pay for such maintenance, repair, and replacement, subject to reimbursement by the Unit Owners described in Article 16." Condominium Declaration (document no. 13-2), Section 14.1 (emphasis supplied). See also RSA 356-B:45 (providing that the Unit Owners' Association may assess the cost to repair and maintain any Limited Common Area against the owner(s) of the unit(s) to which such Limited Common Area is assigned). The Declaration defines "Limited Common Area" to include, among other things, "any portion of a Building (including fixtures attached thereto) that extends beyond the boundaries of a Unit . . . including, without limitation, canopies, loading docks, and exterior equipment such as HVAC equipment and telecommunications equipment, and any sidewalks

6

adjacent to the Building."  Id. at section 2.1(x) (emphasis
supplied).


     If that were the extent of the relevant documents, the
court's inquiry would end there.  "Loading docks" - at least
those that extend beyond the boundaries of an owner's unit - are
defined as Limited Common Area.  So, even if (as plaintiffs
suggest) the phrase "loading dock" includes the ground-level
concrete parking pad adjacent to Target's unit, it would be
defined as Limited Common Area.  And, under both the Condominium
Act and the Declaration, Limited Common Area must be maintained
by the Unit Owners' Association, not individual unit owners.[1]

---

[1]     Parenthetically, the court notes that plaintiffs seem to
believe that all "loading docks" in the condominium are
necessarily Limited Common Area.  That is not the case.  See
Declaration at section 2.1(x).  Only those loading docks (or
portions thereof) that extend beyond the boundaries of a
particular unit are considered Limited Common Area.  So,
although neither party makes this point, it is entirely possible
that what Target calls the "loading dock" - that is, the
elevated loading bay at the rear of its store - is actually part
of (or, more accurately, within the metes and bounds description
of) its unit.  See generally Declaration at section 6.2 ("Unit
Boundaries").  But, that point is of little moment, since Target
acknowledges that it bears responsibility for maintaining and
repairing that elevated loading bay.  The question presented is
whether Target also bears responsibility for maintaining and
repairing the adjacent ground-level concrete parking pad where
Mr. Hunt was injured.

But, prior to Mr. Hunt's injuries, the developer of the Monadnock Condominium (also known as the "Declarant") amended the Declaration several times, creating new types of Limited Common Area and imposing new responsibilities on unit owners with respect to those new types of Limited Common Area. Most of those amendments to the Declaration are not relevant to the parties' dispute.  The Sixth Amendment to the Declaration, however, dated February 17, 2005, made several substantive changes, some of which are central to plaintiffs' assertion that Target, not the Unit Owners' Association, was responsible for the maintenance and repair of the concrete pad.

In February of 2005, the Declarant still owned nearly all the Units in Monadnock Condominium.  At that point, only two units had been sold: one to Home Depot (Unit 1) and another to Berkshire-Keene, LLC (Unit 6).  At that time, it would seem that Target was interested in purchasing Unit 5.  Prior to that purchase, however, the Declarant made several significant amendments to the Declaration (some of which may have been at Target's urging).  Among other things, the Sixth Amendment created what was called "Special Limited Common Area."  That new form of Limited Common Area was defined as: "the portions of a Building (including fixtures attached thereto) that extend beyond the boundaries of a Unit as such boundaries are

8

determined in accordance with Section 6.2 of the Declaration (including, without limitation, canopies, <u>loading docks</u>, and exterior equipment such as HVAC equipment and telecommunications equipment) and any sidewalks adjacent to the Building." Sixth Amendment, Section 3.1(a) (emphasis supplied). It probably bears repeating that "loading docks" may <u>only</u> be designated "Special Limited Common Area" to the extent they extend beyond the boundaries of an owner's unit. So, if a "loading dock" is entirely within the unit, it cannot be Limited Common Area of any sort.

The Sixth Amendment goes on to authorize (but not require) each Unit Owner to alter, improve and/or modify designated Special Limited Common Area. <u>See</u> <u>Id</u>. And, finally, the Sixth Amendment provides that, "Notwithstanding anything in the Declaration to the contrary, <u>each Unit Owner shall maintain and repair the Special Limited Common Areas</u> appurtenant to its Unit." Sixth Amendment, Section 8.1 (emphasis supplied).

As part of the Sixth Amendment to Declaration (and as required by the Condominium Act), the condominium's site plans were revised and recorded in the Cheshire County Registry of Deeds. Although neither party has provided the court with original-size copies of the Second Amended Site and Floor Plans,

9

those plans are available online and the court has reviewed them.  See Cheshire County Registry of Deeds, Cabinet 12, Drawer 10, Plans 118, et seq.  One plan in particular - Plan 0121 - depicts Target's Unit and the surrounding area.  As required by the Condominium Act, see RSA 356-B:20, that plan depicts all Limited Common Area appurtenant to Target's Unit.  Notable, however, is the lack of any designated "Special Limited Common Area," as defined in the Sixth Amendment, appurtenant to Target's unit.

III. Plaintiffs' Arguments.

Plaintiffs advance two theories under which they assert that Target owed Mr. Hunt a legal duty to maintain the ground-level concrete parking pad in a reasonably safe condition.  First, they say the Declaration (in particular, the Sixth Amendment) itself imposes that obligation on Target.  Next, they claim that New Hampshire's common law imposes a duty of care upon Target because it had a "special relationship" with Mr. Hunt as a "business invitee."

A.    Target's Obligation to Maintain the "Loading Dock"

Under New Hampshire law, condominium declarations, amendments, and related documents are contracts that govern the legal rights between the declarant, unit owners, and the unit

10

owners' association.  Consequently, the interpretation of those documents is a question of law for the court to resolve.  <u>See, e.g.</u>, <u>Barclay Square Condo. Owners' Ass'n v. Grenier</u>, 153 N.H. 514, 517 (2006).  And, as the New Hampshire Supreme Court has often noted, "the parties' intent has long been the touchstone of [the court's] interpretation of contracts."  <u>Lynch v. Town of Pelham</u>, 167 N.H. 14, 22 (2014).  <u>See also</u> <u>N.A.P.P. Realty Tr. v. CC Enterprises</u>, 147 N.H. 137, 141 (2001) (holding that if a contract term is ambiguous, the court must "consider the parties' intent by examining the contract as a whole, the circumstances surrounding execution and the object intended by the agreement, keeping in mind our goal of giving effect to the intention of the parties.").

All parties to the Declaration, as amended, join in saying the phrase "loading dock" is unambiguous and does not include the ground-level concrete pad on which delivery trucks park.  That concrete area, they agree, is Limited Common Area that must be properly maintained and repaired by the Unit Owner's Association.

Plaintiffs disagree with that interpretation of the Declaration and the narrow construction of the phrase "loading dock."  That, in turn, gives rise to a somewhat unusual

11

situation in which plaintiffs - who are not parties to the contract - wish to impose upon the contracting parties a different, broader definition of one of the contract's terms. That is, plaintiffs say the parties to the contract have it wrong: the phrase "loading dock" encompasses both the elevated loading bay and the adjacent ground-level concrete parking pad. And, say plaintiffs, once it is understood that Target's "loading dock" includes the adjacent, ground-level concrete pad, it necessarily follows that the Declaration obligates Target to maintain and repair that concrete parking pad as "Special Limited Common Area." If accepted, plaintiffs' interpretation of the Declaration would substantially alter the way the parties to the contract have interpreted it, as well as the way they have historically allocated maintenance and repair obligations (and, of course, liability and insurance obligations).

In support of their argument, plaintiffs rely exclusively upon the language contained in the Declaration and its various amendments. They say that although the Declaration defined "loading docks" (again, to the extent they extend beyond the boundaries of an owner's unit) as Limited Common Area, Declaration at section 2.1(x), and imposed upon the Unit Owners' Association the obligation to maintain and repair all Limited Common Area, id. at section 14.1, the Sixth Amendment to the

12

Declaration substantially altered those maintenance responsibilities. Specifically, plaintiffs point to the provisions creating "Special Limited Common Area," defining it to include "loading docks," and imposing the obligation to repair and maintain the same on the individual unit owners, rather than the Unit Owners' Association.

But, even if there were some evidence to support plaintiffs' claim that Target's "loading dock" is "Special Limited Common Area" (there is not), plaintiffs do not point to any evidence to support their claim that the phrase "loading dock" should be interpreted so broadly as to include within its scope the adjacent ground-level concrete pad. Consequently, there is nothing in the record to support plaintiffs' claim that Target was responsible for maintaining that concrete pad (i.e., evidence suggesting either that: (a) the concrete pad is within the bounds of Target's unit; or (b) the site plans show that the concrete pad is "Special Limited Common Area" appurtenant to Target's unit).

Target, on the other hand, says the Declarant, the unit owners, and the Unit Owners' Association all agree that the ground-level concrete parking pad adjacent to Target's elevated loading bay is Limited Common Area for which the Owners'

13

Association bears maintenance and repair responsibilities. Indeed, the Owners' Association undertook the substantial financial responsibility to contract with a third party to provide snow and ice removal services for that specific area, along with all other Common Area in the condominium (services estimated to cost $285,000 for the 2014/2015 snow-removal season during which Mr. Hunt was injured). See, e.g., Master Agreement for Services (document no. 13-4) (agreement between Unit Owners' Association and BDM Sweeper Services for snow and ice removal); Affidavit of Fred McFadden (document no. 13-5) (statement by property manager for Monadnock Condominium explaining that all parties to the Declaration understand that the ground-level concrete pad adjacent to Target's loading dock is Limited Common Area, the Association is obligated to maintain and repair it, and, accordingly, the Association contracts for those maintenance and repair services); Affidavit of Matthew Robinson, President of BDM Services (document no. 13-6) (acknowledging that, during the winter that Mr. Hunt was injured, BDM contracted with the Owners' Association to provide snow removal and salting services on the concrete pad adjacent to Target's loading dock).

Moreover, while the site plans recorded with the Sixth Amendment do not label the location of Target's (then unbuilt)

14

loading dock and concrete parking pad, they do show the "loading dock" and "concrete pad" for the adjacent unit, Unit 6 (owned by Berkshire-Keene, LLC). See Cheshire County Registry of Deeds, Cabinet 12, Drawer 10, Plan 0121. Those plans specifically distinguish between Unit 6's "loading dock" and the adjacent ground-level "concrete pad" on which delivery trucks park. The "concrete pad" (but not the "loading dock") is shown on the plans as Limited Common Area appurtenant to Unit 6. That strongly supports Target's assertion that the declarant, the Unit Owners, and the Unit Owners' Association, understood that, under the governing legal documents, all "loading docks" in the condominium are separate from, and treated differently than, the adjacent, ground-level "concrete pads." It also supports Target's claim that the latter is "Limited Common Area," which the Unit Owners' Association must maintain. See Declaration, Section 14.1 (The Unit Owners' Association shall maintain, repair and replace the Common Area, including Limited Common Area, in a sightly, safe condition and good state of repair."). See also RSA § 356-B:41.[2]

---

[2] In support of their argument, plaintiffs also allude to language in the Fourth Amendment to Declaration creating what was known as "Unit Owner-Maintained Limited Common Area" and language seemingly imposing upon unit owners the obligation to maintain "immediately adjacent Limited Common Area." But, those amendments to the Declaration were superseded by the Sixth Amendment, which vested in Target, as the owner of Unit 5, the right to elect whether it wished to "maintain the Limited Common

15

Even if the court were to accept plaintiffs' implicit suggestion that the Declaration's use of the phrase "loading dock" is ambiguous, it still could not adopt plaintiffs' broad interpretation of that phrase. The intent of all parties to the Declaration, as expressed in their actions, is clear: "loading dock," as used in both the Declaration and the site plans, refers to the elevated loading bay, from which merchandise is moved between delivery vehicles and a unit owner's store. It does not include within its scope the adjacent ground-level concrete pad on which delivery trucks park.

In light of the foregoing, it is plain that the property on which Mr. Hunt was injured is Limited Common Area of the Monadnock Condominium. Consequently, Target was not obligated - either by the Condominium Act or the Declaration of Monadnock Condominium - to remove accumulated snow and ice from that area.

---

Area appurtenant to Unit #5 at its own cost and expense," or defer those obligations to the Unit Owners' Association. See Sixth Amendment, Section 8.1(b). Target did not elect to do so and, as noted above, the Unit Owners' Association contracted with a third party to address snow removal from the Common Areas and Limited Common Areas, including the concrete parking pad at issue in this case. Moreover, the Fourth Amendment specifically provides that any such "Unit Owner-Maintained Limited Common Area" shall be "labeled as such on the Site Plans." Plaintiffs have pointed to no site plans showing the ground-level concrete pad on which Mr. Hunt was injured as "Unit Owner-Maintained Limited Common Area" appurtenant to Target's unit.

That obligation was borne by (and properly assumed by) the Unit Owner's Association.

B.    Target's "Special Relationship" with Mr. Hunt.

Next, plaintiffs assert that even if Target does not own the ground-level concrete pad on which Mr. Hunt was injured, it was an "occupier" of that land (since it had the exclusive right to use that Limited Common Area). Consequently, say plaintiffs, Target owed Mr. Hunt "a duty of reasonable care under all the circumstances in the maintenance and operation of [that] property." Plaintiffs' Memorandum (document no. 15-1) at 7 (quoting Grant v. Wakeda Campground, LLC, 631 F. Supp. 2d 120, 124 (D.N.H. 2009)). In a related argument, plaintiffs say Target owed a duty of reasonable care to Mr. Hunt because he was a "business invitee" with whom Target had a special relationship. See Plaintiffs' Memorandum at 8. See also Grant, 631 F. Supp. 2d at 124 ("Defendant landowner has the duty to keep the property safe for his invitees, but must only exercise the care of a person of average prudence in maintaining the premises.").

There are, however, a few problems with plaintiffs' position. First, one would have to assume that the New Hampshire Condominium Act (which imposes maintenance and

17

insurance responsibilities for Common Area on the Unit Owners'
Association) does not supplant the common law principles upon
which plaintiffs rely.  Then, to hold Target liable for Mr.
Hunt's injuries, the trier-of-fact would have to have evidence
upon which to base the conclusion that (a) those injuries were
foreseeable, and (b) Target did not act in a manner reasonably
calculated to prevent them.  See generally Simpson v. Wal-Mart
Stores, Inc., 144 N.H. 571, 573 (1999) (plaintiffs produced
sufficient evidence for jury to conclude that it had snowed
earlier in the day on which plaintiff slipped and fell;
defendant was aware of icy conditions in the area where
plaintiff fell; defendant knew those conditions created a hazard
to customers; yet, defendant took no action to address those
conditions).

Here, the record is devoid of any evidence even suggesting
that Target could have (or should have) foreseen Mr. Hunt's
injuries (e.g., some evidence of when it last snowed prior to
Mr. Hunt's injury; some evidence that Target was (or should have
been) aware that ice and snow tended to accumulate on the
concrete parking pad; some evidence that Target knew or
suspected that BDM Services was doing a poor job of maintaining
that area on behalf of the Unit Owners' Association, etc.).  Nor
is there evidence that Target failed to act reasonably under the

circumstances by relying upon the Unit Owners' Association and its contractor, BDM Services, to remove snow and ice from the area.

In order to defeat Target's motion for summary judgment, plaintiffs must present some evidence to support their theories of liability and demonstrate that there are genuinely disputed material facts warranting a trial. They have not done so.

## Conclusion

Target, the Declarant of the Monadnock Condominium, and the other unit owners at Monadnock Condominium all interpret the provisions of the Declaration to define the phrase "loading dock" to mean the elevated platform or loading bay, up to which delivery trucks would back, and from which merchandise would be moved between those trucks and the unit owners' stores. Those parties to the contract plainly do <u>not</u> interpret (and have never interpreted) the phrase "loading dock" to include within its scope the adjacent ground-level concrete pad on which delivery trucks would park. <u>See, e.g.</u>, Second Amended Site and Floor Plans, Cheshire County Registry of Deeds, Cabinet 12, Drawer 10, Plan 0121. Under that construction of the Declaration, the land on which Mr. Hunt was injured is "Limited Common Area" - it is not part of Target's unit, nor does the Declaration (or the

Condominium Act) obligate Target to maintain it.  Rather, the Unit Owners' Association was solely responsible for maintaining and repairing that property.  The arguments advanced by plaintiffs - who are not parties to that contractual agreement - seeking to: (a) expand the definition of the phrase "loading dock" to include the ground-level concrete pad on which Mr. Hunt was injured, and (b) define that expanded area as "Special Limited Common Area" (for which Target would be responsible), are not supported by evidence in the record, the Declaration, or the New Hampshire Condominium Act.

Equally unavailing are plaintiffs' efforts to demonstrate some basis in the record upon which a jury could plausibly rest the conclusion that Target owed, and breached, a duty of care to Mr. Hunt by unreasonably failing to mitigate the risk of foreseeable injuries of the sort Mr. Hunt sustained.  Plaintiffs have pointed to no evidence suggesting how long the ice had been present before Mr. Hunt fell, or that Target was aware that snow and/or ice tended to accumulate on the concrete pad, or that Target acted unreasonably in relying upon the Unit Owners' Association (and its agent, BDM Services) to remove snow and spread salt in that area.  Absent some evidence on one or more of those points, plaintiffs cannot withstand summary judgment. See generally Irobe v. United States Dept. of Agric., 890 F.3d

371, 377 (1st Cir. 2018) ("[S]ummary judgment is warranted if a nonmovant who bears the burden on a dispositive issue fails to identify 'significantly probative' evidence favoring his position.") (citation omitted); <u>Mesnick v. Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) ("Genuine issues of material fact are not the stuff of an opposing party's dreams. On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion.").

For the foregoing reasons, as well as those set forth in Target's legal memorandum, Target's motion for summary judgment (document no. 13) is granted. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 1, 2019

cc: Ronald E. Cook, Esq.
    Meaghan A. Jepsen, Esq.
    Sean J. Milano, Esq.
    Meredith M. Lasna, Esq.