Merrimack
No. 2011-613

DAVID ELLIS

v.

CANDIA TRAILERS AND SNOW EQUIPMENT, INC. & a.

Argued: October 11, 2012
Opinion Issued: December 21, 2012

458

*Orr & Reno, P.A.*, of Concord (*James F. Laboe* and *Robert S. Carey* on the brief, and *Mr. Laboe* orally), for the petitioner.

*Emile R. Bussiere, Jr.*, of Manchester, by brief and orally, for the respondents.

LYNN, J. The petitioner, David Ellis,[1] appeals an order of the Superior Court (*McNamara*, J.) rescinding a non-compete agreement and ordering partial restitution as a remedy, and finding the New Hampshire Consumer Protection Act (CPA), RSA ch. 358-A (2009), inapplicable to the respondents' conduct. The respondents, Candia Trailers and Snow Equipment, Inc.[2] and its principals, Jeffrey Goff (Goff) and Suzanne Goff, cross-appeal the rescission of the non-compete agreement. We affirm in part, reverse in part, and remand.

The trial court found the following facts. Since the 1980s, the Goffs owned and Goff operated Precision Truck, a business which sold and installed truck bed parts, bed linings, and various accessories. In 2006, the Goffs sold Precision Truck to Ellis, memorializing the agreement in three documents: an Asset Purchase Agreement (APA), a Non-Compete Agreement (NCA), and an Inventory Purchase Agreement (IPA).

Ellis signed the APA on February 22, 2006, agreeing to pay $20,000 for Precision Truck's assets, including its good will, *i.e.*, the business's name, telephone numbers, customer lists, working agreements, advertising materials, etc. The APA also contained a consulting agreement and tenancy agreement, which provided that Ellis would operate Precision Truck at its existing premises for ninety days after the closing, during which time Goff would work there as a full-time consultant. The APA specified that Ellis's obligations were conditioned on the Goffs executing the NCA and IPA.

On March 23, 2006, the Goffs executed the NCA, agreeing not to compete with Ellis in his operation of Precision Truck and, among other things, "not [to] solicit, divert or take away, the business or patronage of any of the customers of [Precision Truck] with whom [it] has had a relationship prior to the execution of the [APA]." The NCA provided that, under the terms of the APA, Ellis agreed to purchase the business assets of Precision Truck, including the company's good will, and that Ellis "would not acquire the business without Goffs' covenant not to compete." Each party acknowledged that the other "would suffer irreparable harm and would not have adequate remedy at law for the material breach of [the NCA], even though some damages may be provable." The parties agreed that equitable remedies, including injunctive relief, would be available in case of breach. Ellis paid $340,000 to the Goffs for executing the NCA.

---

[1] Although Precision Truck and Body Equipment, Inc. (Precision Truck) is also named as a petitioner in the underlying action, Ellis admits that all claims in this appeal "accrue solely to the benefit of David Ellis and, therefore, David Ellis is the only party to this appeal."

[2] Candia Trailers and Snow Equipment, Inc. is the name given to the business which Jeffrey Goff retained after selling Precision Truck to Ellis. Although named as a respondent, it plays no role in the facts or analysis relevant to this appeal.

Although the NCA was to remain in effect for seven years, it would expire much sooner — on June 1, 2007 — if Ellis breached the third agreement, the IPA. The IPA obligated Ellis to buy Precision Truck's remaining inventory at cost by June 1, 2007, and "[i]f [Ellis] fails to fulfill this covenant, . . . Jeffrey Goff shall be relieved of [his] obligations under the Non-Compete Agreement."

Within a few weeks of signing the NCA, and in violation of its terms, Goff began competing with Precision Truck. Ellis thereafter failed to purchase all of Precision Truck's inventory by June 1, 2007.

Ellis sued the respondents for breach of contract and violation of the CPA, asking the court, among other things, to rescind the NCA. Although he had initially included a claim for damages, Ellis ultimately opted to proceed to trial only on his claims seeking rescission and restitution for breach of the NCA and violation of the CPA.

The trial court found that the NCA, IPA, and APA were three separate agreements, each with its own terms, obligations, and remedies for breach. The court also found that Goff breached the NCA and that Ellis breached the IPA. Because Ellis failed to purchase Precision Truck's remaining inventory by June 1, 2007, the trial court ruled that the NCA remained in effect only until that date. Nevertheless, because the court found that Goff materially breached the NCA almost immediately after signing it and acted as though the NCA did not exist, it rescinded the NCA and awarded Ellis partial restitution.

Having found that the NCA was severable from the IPA and APA, the court calculated a restitution award for breach of the NCA by dividing its total value, $340,000, by its intended duration of seven years, or eighty-four months. Multiplying the monthly value by the number of months during which Goff owed Ellis an obligation not to compete, *i.e.*, until June 2007, the court awarded Ellis the resulting amount, $60,714.28. The court rejected Ellis's CPA claim, finding the statute inapplicable because the sale of Precision Truck to Ellis was an isolated sale. This appeal and cross-appeal followed.

Both parties argue that the trial court unsustainably exercised its discretion when it rescinded the NCA and awarded partial restitution to Ellis. The respondents argue that: (1) the evidence presented to the court was insufficient to support a finding of material breach justifying rescission; and (2) rescinding the NCA alone was improper because the NCA was not severable from the IPA and APA. Ellis, on the other hand, argues that partial restitution did not go far enough to return him to the *status quo* because Goff was allowed to retain the bulk of the consideration he received for the agreement (the NCA) he breached. Ellis also argues that the trial court erred when it found the CPA inapplicable. Because we conclude that

the trial court erred when it found the NCA, APA, and IPA to be severable, we reverse its order rescinding the NCA alone and ordering partial restitution.

■ "Rescission is an equitable remedy the granting of which is always a matter within the sound discretion of the trial court, depending upon the circumstances of each particular case." *Mooney v. Nationwide Mut. Ins. Co.*, 149 N.H. 355, 357 (2003) (quotation omitted). Equitable rescission, with restitution, is a remedy that restores the injured party to the position occupied before the transaction, *id.*, and "rests upon the relative equities of the parties as determined by the trial court." *Derouin v. Granite State Realty, Inc.*, 123 N.H. 145, 147-48 (1983). If the *status quo* cannot be restored, a party cannot obtain rescission and must seek damages instead. 12A C.J.S. *Cancellation of Instruments; Rescission* § 80, at 558 (2004).

■ If a contract is part of a larger agreement, it may be rescinded only if it is severable from that larger agreement; if it is not, the entire agreement must be rescinded.

The general rule undoubtedly is that a right to rescind applies to the whole of the contract and cannot be exercised as to a part only.

. . . .

Usually where partial rescission is allowed it is founded on the proposition that the contract is severable and for rescission purposes is to be regarded as embracing two or more contracts.

Annotation, *Partial Rescission of Contract*, 148 A.L.R. 417, 418, 423 (1944); *cf. Pearson v. Baldwin*, 81 N.H. 247, 249 (1924) ("[A]n entire, indivisible contract . . . must . . . stand or fall in its entirety.").

■■ The trial court found the APA, IPA, and NCA to be severable and rescinded the NCA alone. "[Severability] requires that the parties' promises and considerations be capable of apportionment, so that each promise and its corresponding consideration is analogous to a separate contract." *Technical Aid Corp. v. Allen*, 134 N.H. 1, 18 (1991).

[Whether a contract is severable or indivisible] depends upon the intention of the parties as shown by the terms and formal character of the documents which they used to express their intention, when read in the light of the circumstances under which the documents were made. In other words, the court is called upon to interpret the documents. This is a question of law, the decision of which is reviewable in this court.

*Kidd v. Traction Co.*, 74 N.H. 160, 170 (1907) (citation omitted). We review questions of law *de novo. In the Matter of Taber-McCarthy & McCarthy*, 160 N.H. 112, 115 (2010).

We conclude that the NCA is not severable from the IPA and APA because, by their terms, the agreements are interdependent.

> As an aid to ascertaining the intention of the parties [to treat the contract as severable], it is proper to consider whether the contract is to be performed only as a whole and whether each and all of its parts are interdependent and common to one another and to the consideration, or whether it is susceptible of division and apportionment.

77A C.J.S. *Sales* § 157, at 224 (2008); *cf. Allen*, 134 N.H. at 18. Although the parties structured the sale of Precision Truck as three separate agreements, the APA made Ellis's obligations under it contingent upon the Goffs executing the NCA and Ellis executing the IPA. The NCA referenced the APA and stated that Ellis would not buy Precision Truck's assets unless the Goffs signed the NCA. In addition, the duration of the NCA was contingent upon Ellis's performance under the IPA: if he failed to purchase Precision Truck's inventory by a fixed date, Goff's obligations under the NCA would terminate seven years earlier than if Ellis completed the inventory purchase. Because, in one way or another, each agreement was contingent on the other two, they "resulted from a single assent to the whole matter" and "were part of one single undertaking." *Maloney v. Company*, 98 N.H. 78, 83 (1953).

The trial court correctly noted that each agreement is, on its face, supported by separate consideration. This, however, is not dispositive of whether the agreements are severable.

> Where the agreements of parties relate to the whole of the consideration on both sides, the promises are dependent, and one of them is a condition precedent to the other; but if the agreements refer to a part only of the consideration on both sides, and a breach may be paid for in damages, the promises may be regarded as independent.

*Gilman v. Berry*, 59 N.H. 62, 64 (1879); *see Robinson v. Crowninshield*, 1 N.H. 76, 79-80 (1817) ("[W]here mutual contracts go only to a part of the consideration, and a breach of that part may be paid for in damages, the defendant shall not set it up as a condition precedent, and the covenants in such case are . . . independent." (citation omitted)).

■ ■ The primary asset transferred to Ellis under the APA was Precision Truck's good will, in exchange for $20,000. To protect that good will, Ellis required the Goffs to sign the NCA and paid them $340,000, the bulk of the consideration paid for the sale of the business.[3] On the surface, the IPA had the least amount of consideration in support of it, given that it merely required Ellis to purchase inventory at cost. However, the effect of the IPA stripped Precision Truck's good will of the protections stemming from the NCA in one year instead of seven in case of Ellis's breach. As a result, all three agreements, in one way or another, "relate to the whole of the consideration on both sides," *i.e.,* the protection of Precision Truck's good will by obligating the Goffs not to compete and incentivizing Ellis to keep the NCA intact. *Cf. Carleton v. Woods,* 28 N.H. 290, 294-95 (1854) ("The sale and delivery of each article formed the consideration, in this case, for the promise to pay the price of it. The contract was divisible.").

■ Furthermore, both Goff and Ellis testified that they perceived the APA, IPA, and NCA as one agreement. Ellis agreed that the APA "was all part of one bundle" and that "[n]ot one of these agreements meant much of anything without the others." Goff testified that he too "always looked at it as one complete agreement." "[R]ead in the light of the circumstances under which the documents were made," the APA, IPA, and NCA were intended as an entire, indivisible agreement. *Kidd,* 74 N.H. at 170; *see Robinson,* 1 N.H. at 79 ("[Whether all parts of an agreement are dependent and inseparable] is to be determined by the intent of the parties, as evinced by the language and nature of the whole contract." (citation omitted)); *Piper v. Boston & Railroad,* 75 N.H. 435, 439 (1910); *see also MacLeod v. Chalet Susse Int'l. Inc.,* 119 N.H. 238, 243 (1979) ("Intent . . . should be determined not only in light of the instrument itself, but also in view of all the surrounding circumstances." (quotation omitted)).

Accordingly, we hold that the trial court erred as a matter of law when it ruled that the IPA, APA, and NCA were severable. *Kidd,* 74 N.H. at 170.

---

[3] The disproportional allocation of consideration may also reflect the parties' intent to treat the agreements as indivisible.

> If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other *is proportional to each item to be performed,* . . . such a contract will generally be held to be severable. But if the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and independent items.

*Hale v. Brown,* 59 N.H. 551, 557 (1880) (quotations omitted; emphasis added).

Because the NCA was not severable from the IPA and APA, it could not be rescinded without rescinding the IPA and APA as well. Annotation, *supra*, 148 A.L.R. at 418, 423.

Given that the three agreements were interdependent and that it therefore was improper to grant rescission of the NCA alone, we reverse the award of $60,714.28 in restitution and remand to the trial court to determine what remedies, if any, are available.

 Turning to Ellis's CPA claim, we affirm the trial court's dismissal of this claim. RSA 358-A:2 (2009) declares it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." The CPA broadly defines trade and commerce as "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this state." RSA 358-A:1, II. We have held that the scope of the CPA is narrower than its broad language may suggest, and that it does not encompass isolated sales or contracts that are not undertaken in the ordinary course of a trade or business. *See Hughes v. DiSalvo*, 143 N.H. 576, 578 (1999).

> To determine whether the Consumer Protection Act applies to a particular transaction, we analyze the activity involved, the nature of the transaction, and the parties to determine whether a transaction is a personal or business transaction. . . . Remedies under the Consumer Protection Act are not available where the transaction is strictly private in nature, and is in no way undertaken in the ordinary course of a trade or business. . . . Similarly, isolated sales of property by an owner are not subject to the Consumer Protection Act. The purpose of the Act is to ensure an equitable relationship between consumers and persons engaged in business.

*Id.* (quotations and citations omitted); *accord Milliken & Co. v. Duro Textiles, LLC*, 887 N.E.2d 244, 259 (Mass. 2008) ("[A]nalysis of the applicability of [the Massachusetts CPA] requires a dual inquiry whether there was a commercial transaction between a person engaged in trade or commerce and another person engaged in trade or commerce, such that they were acting in a 'business context.' ").

 Ellis concedes that the sale of Precision Truck "was an isolated, one time transaction for both parties." The CPA, therefore, does not apply because involvement in a single transaction is insufficient to constitute

engagement in trade or commerce. *Chase v. Dorais*, 122 N.H. 600, 601-02 (1982); *cf. Frost v. Comm'r, N.H. Banking Dep't*, 163 N.H. 365, 376 (2012). We agree with the trial court that "Goff was not in the business of selling his business and the parties were on equal footing at the sale." The sale of Precision Truck constituted an "isolated sale[] of property by an owner" and was "in no way undertaken in the ordinary course of [the respondents'] trade or business" of selling and installing truck bed parts, bed linings, etc. *Hughes*, 143 N.H. at 578.

Ellis argues that Goff's conduct after the sale of the business, rather than the sale itself, violated the CPA. He asserts that by competing with Precision Truck, Goff breached what was the cornerstone of the entire transaction, and argues that, together, the NCA and the sale of Precision Truck constituted an "ongoing business relationship." We are not persuaded. As was the case with the lease-purchase agreement between the parties that was the subject of the CPA claim in *Hughes*, the mere fact that the business sale here at issue contemplated performance by the parties over a period of time is not sufficient to bring it within the ambit of the CPA where the overall transaction remained a single, isolated event rather than an on-going course of trade or commerce. *See id.* (a lease-purchase agreement was an isolated transaction outside the CPA notwithstanding the ongoing landlord-tenant relationship between the parties).

Finally, we address the respondents' argument on cross-appeal that the evidence presented to the court was insufficient to support a finding that Goff's breach of the NCA was material and thus justified rescission and restitution. *See Patch v. Arsenault*, 139 N.H. 313, 318 (1995) (rescission and restitution may only be awarded if the breach is material). We conclude that the trial court had sufficient evidence to support its finding that Goff materially breached the NCA.

Whether a breach of contract is material is a question of fact, *see Fitz v. Coutinho*, 136 N.H. 721, 725 (1993), and we will uphold the trial court's findings of fact and rulings of law unless they lack evidentiary support or constitute a clear error of law, *see McNeal v. Lebel*, 157 N.H. 458, 461 (2008). We defer to the trial court's judgment on such issues as resolving conflicts in testimony, assessing the credibility of witnesses, and determining the weight of the evidence. *Cook v. Sullivan*, 149 N.H. 774, 780 (2003). Our standard of review is not whether we would rule differently, but whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. *Id.*

The respondents argue that the court lacked evidence to find that Goff's breach of the NCA was material because the petitioners did not

present any evidence of damages at trial. In effect, the respondents argue that the materiality of a breach cannot be proved without evidence of damages. We disagree.

> [F]or a breach of contract to be material, it must "go to the root" or "essence" of the agreement between the parties, or be "one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract." A breach is "material" if a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions, the breach substantially defeats the contract's purpose, or *the breach is such that upon a reasonable interpretation of the contract, the parties considered the breach as vital to the existence of the contract.*

23 WILLISTON ON CONTRACTS § 63:3, at 438-39 (4th ed.) (footnotes omitted; emphasis added). The absence of proof of damages is not dispositive of whether a breach is material.

> In many cases, a material breach of contract is proved by the established amount of the monetary damages flowing from the breach; *however, proof of a specific amount of monetary damages is not required when the evidence establishes that the breach was so central to the parties' agreement that it defeated the essential purpose of the contract.*

*Id.* at 439 (emphasis added).

■■ The NCA contained the following provision: "Buyer would not acquire the business without Goff's covenant not to compete, as set forth herein." Because the NCA itself makes it clear that the promise not to compete is vital to the existence of the contract, the trial court had sufficient basis to find Goff's breach material, notwithstanding the absence of proof of damages.

■■■ We also reject the respondents' argument that the evidence does not support a finding of material breach justifying restitution because the trial court found "only 8 breaches of the Non-Compete Agreement" and did not address the significance of these breaches.

> Although the relationship between the monetary loss to the injured party as a result of the failure and the contract price may be significant, no simple rule based on the ratio of the one to the other can be laid down, and here, . . . all relevant circumstances must be considered [when determining whether a breach is material].

RESTATEMENT (SECOND) OF CONTRACTS § 241 (b), at 238-39 (1981). The relevant circumstances which the trial court considered included Goff's acknowledgement that he proceeded as though the NCA were void as early as May 2006, and that he competed with Precision Truck within weeks of signing the NCA. The evidence supports the court's finding that, regardless of the number of breaches, Goff's actions went to the heart of the transaction and constituted a material breach. *See Patch,* 139 N.H. at 318.

*Affirmed in part; reversed in part; and remanded.*

DALIANIS, C.J., and HICKS and CONBOY, JJ., concurred.