Rockingham
No. 2012-371

FOUNDATION FOR SEACOAST HEALTH

v.

HOSPITAL CORPORATION OF AMERICA & a.

Argued: May 9, 2013
Opinion Issued: July 16, 2013

*McDermott Will & Emery LLP*, of Boston, Massachusetts (*Peter L. Resnick* on the brief and orally), *Smith Lee Nebenzahl LLP*, of Sharon, Massachusetts (*Emily E. Smith-Lee* on the brief), and *Devine, Millimet & Branch P.A.*, of Manchester (*George R. Moore* and *Joshua M. Wyatt* on the brief), for the plaintiff.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Wilbur A. Glahn, III* on the brief), and *Latham & Watkins LLP*, of Washington, D.C. (*Everett C. Johnson, Jr. & a.* on the brief, and *Mr. Johnson* orally), for the defendants.

CONBOY, J. This appeal and cross-appeal are from decisions of the Superior Court (*McHugh*, J.) on remand after we decided *Foundation for Seacoast Health v. HCA Health Services of New Hampshire*, 157 N.H. 487 (2008) (*Foundation I*). We affirm in part and reverse in part.

This case and *Foundation I* involve the same parties and relate to a 1983 Asset Purchase Agreement (the Agreement) under which the trustees of Portsmouth Regional Hospital (the Hospital) agreed to sell the Hospital to defendants Hospital Corporation of America (HCA) and HCA Health Services of New Hampshire, Inc. (HCA-NH). *Foundation I*, 157 N.H. at 489. The plaintiff, the Foundation for Seacoast Health, is a non-profit entity created with the proceeds from the Hospital's 1983 sale. *Id.* The defendants are HCA, its successors, and HCA-NH. *Id.* at 488. In 1983, HCA was a publicly traded company that owned all of the common stock of HCA-NH. *Id.* at 489. HCA currently is survived by a successor company. *Id.* For ease

of reference, we refer to HCA and its successors as "HCA." HCA-NH has owned and operated the Hospital since the 1983 Agreement. *Id.* at 490.

The dispute between the parties centers upon the meaning and effect of Section 5.2.11(a) of the Agreement, which, among other things, affords the Foundation the right to "repurchase" the Hospital's tangible assets under certain conditions. *Id.* at 489. The parties' dispute began in 2006, when the Foundation brought a petition in equity to enforce that right. *See id.* at 490-91.

*Foundation I* concerned two transactions, one in 2006 and the other in 1999, which the Foundation contended violated Section 5.2.11(a). *Id.* In the 2006 transaction, a group of private investors acquired the stock of HCA Inc., which was the corporate grandparent of HCA and the corporate great-grandparent of HCA-NH. *Id.* at 490. In the 1999 transaction, HCA transferred to its corporate parent, Healthtrust, Inc. — The Hospital Company (Healthtrust), all of its interest in HCA-NH's corporate parent. *Id.* at 490-91. We affirmed the grant of summary judgment to the defendants on the Foundation's claims related to the 2006 transaction and vacated the dismissal of the Foundation's claims related to the 1999 transaction. *Id.* at 496-97, 502. We remanded to the trial court for further proceedings consistent with our opinion. *Id.* at 502.

On remand, by agreement of the parties, the trial court bifurcated the proceedings to determine whether the 1999 transaction breached Section 5.2.11(a) and, if so, the Foundation's remedy. In the liability proceeding, the trial court found that the 1999 transaction constituted a material breach of Section 5.2.11(a). However, in the remedy proceeding, the trial court clarified that the parties intended Section 5.2.11(a) to afford the Foundation the right to purchase the Hospital only if it were sold to a third party. Because the 1999 transaction was an inter-company transfer, it did not afford the Foundation that right. Accordingly, the trial court did not order specific performance of the Foundation's alleged contractual right to purchase the Hospital. The trial court also declined to award the Foundation monetary damages for the defendants' breach.

The trial court ordered HCA to "undo" the 1999 transaction by "tak[ing] whatever steps are necessary to put the hospital back in the same direct corporate chain that it was before the 1999 transfer." The court also awarded the Foundation its attorney's fees for the defendants' breach, but did so for only the liability proceeding. The court found that the Foundation could have challenged the 1999 transaction "by using far less resources and people than [it] chose to use in this case" and that, before the remedy proceeding, HCA offered to undo the 1999 transaction — the remedy the trial court eventually ordered.

The Foundation appeals the trial court's determination that Section 5.2.11(a) was intended to give the Foundation a right to purchase the Hospital only in the event of a sale to a third party. The Foundation argues that because of this erroneous determination, the trial court also erred by failing to: (1) order specific performance of the Foundation's contractual right to purchase the Hospital; (2) award monetary damages for the defendants' material breach; and (3) award attorney's fees for the remedy proceeding. The Foundation further contends that the trial court erred by ordering HCA to undo the 1999 transaction. In their cross-appeal, the defendants challenge the trial court's determination that their breach of Section 5.2.11(a) was "material" and its corresponding decision to award attorney's fees to the Foundation. We affirm all but the trial court's attorney's fee award.

## I. Foundation's Contractual Right to Repurchase Hospital

We first address whether, as the Foundation argues, the trial court incorrectly decided that the Foundation lacked a contractual right to "repurchase" the Hospital. Resolving this issue requires that we interpret Section 5.2.11(a) of the Agreement.

When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole. *Birch Broad. v. Capitol Broad. Corp.*, 161 N.H. 192, 196 (2010). We give an agreement the meaning intended by the parties when they wrote it. *Id.* "Absent ambiguity, however, the parties' intent will be determined from the plain meaning of the language used in the contract." *Id.* (quotation omitted). The interpretation of unambiguous contractual language is a question of law, which we review *de novo. See id.* The determination of whether contractual language is ambiguous is also a question of law entitled to *de novo* review. *Id.*

"The language of a contract is ambiguous if the parties to the contract could reasonably disagree as to the meaning of that language." *Id.* (quotation omitted). "If the agreement's language is ambiguous, it must be determined, under an objective standard, what the parties, as reasonable people, mutually understood the ambiguous language to mean." *Id.* "In applying this standard, a court should examine the contract as a whole, the circumstances surrounding execution and the object intended by the agreement, while keeping in mind the goal of giving effect to the intentions of the parties." *Id.* at 196-97. "Where . . . the terms of a contract are indeed ambiguous, and the fact finder has properly looked to extrinsic evidence to determine the intent of the parties, our standard of review is more

deferential." *Behrens v. S.P. Constr. Co.*, 153 N.H. 498, 500-01 (2006). We will sustain its findings and conclusions unless they are lacking in evidentiary support or tainted by error of law. *Id.*

*A. Section 5.2.11(a)*

Section 5.2.11(a) of the Agreement provides:

5.2.11. *Right to Repurchase Hospital.*

> (a) *Right of First Refusal.* Neither HCA nor HCA-NH will directly or indirectly by merger or transfer of stock or otherwise sell, transfer, assign, or otherwise dispose of all or any substantial part of the assets of the Hospital (a "Transfer") unless (i) HCA shall have received a bona fide arm's length written offer with respect to the Transfer of such assets of the Hospital (a "Bona Fide Offer"), and (ii) prior to the making of any such Transfer, HCA shall have given written notice to the Foundation stating its desire to dispose of such assets and enclosing a copy of the Bona Fide Offer. *Thereafter*, the Foundation shall have an assignable option to purchase all (but not less than all) of the tangible assets specified in such notice, said option to be exercised by the giving, by the Foundation or its assignee (the "Purchaser"), as appropriate, within 120 days after delivery of such notice, of a counter-notice stating that the sender of such counter-notice desires to purchase all of such assets. . . . Notwithstanding the foregoing, this Section 5.2.11(a) shall not apply to a Transfer by HCA or HCA-NH to a wholly-owned subsidiary of HCA ("Transferee") if, from and after such Transfer, the Transferee shall perform and assume all obligations of HCA and HCA-NH under this Agreement and prior to such Transfer shall agree to such performance and assumption of obligations in a writing satisfactory to the Seller; provided, however, that no such Transfer shall relieve HCA from any of its obligations hereunder.

(Emphasis added.)

Under the plain meaning of Section 5.2.11(a), HCA and HCA-NH may not "Transfer" the Hospital's assets "directly or indirectly" unless two conditions are met. The first condition is that there has been a "Bona Fide Offer" in writing. A "Bona Fide Offer" is an "arm's length" offer, meaning

an offer from an unrelated third party. The second condition is that there is prior notice to the Foundation of the intent to "Transfer"; the notice must enclose the "Bona Fide Offer." "Thereafter," the Foundation has "an assignable option to purchase all (but not less than all) of the tangible assets specified in such notice." The only exception to this prohibition against "Transfers" pertains to a "Transfer" to a "wholly-owned subsidiary."

In the 1999 transaction, HCA transferred to its corporate parent all of its interest in HCA-NH's corporate parent. *Foundation I*, 157 N.H. at 490. For the purposes of this case, it is undisputed that this constituted a "Transfer" within the meaning of Section 5.2.11(a) and that it does not fall within the "wholly-owned subsidiary" exception. *See id.* at 501-02. It is also undisputed that because this was not a "Transfer" to a bona fide third party and was not preceded by notice to the Foundation, the transaction constituted a breach of Section 5.2.11(a).

The question is whether the Foundation now has "an assignable option to purchase" the Hospital's assets that should have been, but were not, the subject of prior notice. This case requires us to decide whether a "Transfer" is the sole condition precedent to the Foundation's contractual right to purchase the Hospital. In effect, this case turns on the meaning of the word "Thereafter."

■ The Foundation essentially argues that "Thereafter" means after the "Transfer." The defendants counter that "Thereafter" means after a bona fide offer from a third party and prior notice. Both sides contend that the meaning of this part of Section 5.2.11(a) is unambiguous. The trial court relied upon extrinsic evidence to interpret this part of Section 5.2.11(a). We construe its reliance on extrinsic evidence as a finding that this part of Section 5.2.11(a) is ambiguous. We, too, conclude that this part of Section 5.2.11(a) is ambiguous. *See id.* at 501; *N.A.P.P. Realty Trust v. CC Enterprises*, 147 N.H. 137, 139 (2001) ("The language of a contract is ambiguous if the parties to the contract could reasonably disagree as to the meaning of that language." (quotation and brackets omitted)). Accordingly, although the Foundation argues that the trial court erred by admitting parol evidence to construe this part of Section 5.2.11(a), we hold that it did not err in this respect. *Behrens*, 153 N.H. at 501 ("A trial court may use parol evidence to aid in interpreting an ambiguous term of a contract.").

■ After hearing four days of evidence in the liability proceeding and fifteen days of evidence in the remedy proceeding, the trial court found that the parties intended the Foundation to have a right to purchase the Hospital only upon a potential sale to a third party. In other words, the trial court decided that the Foundation's contractual right to purchase the

Hospital did not arise absent a bona fide offer from a third party. This conclusion is supported by the record and is not legally erroneous. *See id.* at 500-01; *see also Glick v. Chocorua Forestlands Ltd. P'ship*, 157 N.H. 240, 247 (2008) ("a right of first refusal generally empowers its holder with a preferential right to purchase property on the same terms offered by or to a bona fide purchaser" (quotation omitted)).

The trial court relied upon the testimony of Attorney J. Bradford Malt, who represented the Foundation in 1983 and drafted Section 5.2.11(a). The court found that "Attorney Malt believed, and the parties intended in 1983, that the right to repurchase [the Hospital] was available only in the event of a third-party sale." Attorney Malt's testimony supports this finding:

> Q. So in order to have what you call an 'automatic' contractual right to repurchase, two conditions had to be met. Is that correct?
>
> A. Yes. Each — both of the conditions had to be met.
>
> . . . .
>
> Q. . . . First, HCA had to receive a bona fide, arm's length, written offer. Is that correct?
>
> A. Correct.
>
> Q. And the second condition was, prior to making the transfer, HCA had to give written notice to the Foundation stating its desire to dispose of the assets.
>
> A. Yes.
>
> . . . .
>
> Q. What I'm asking you is what kinds of transfers trigger a right to purchase the hospital from HCA under this provision.
>
> A. Okay. Okay. Yeah, transfers pursuant to which a bona fide offer is received and notice is given.

Attorney Malt explained that the 1999 transaction did not afford the Foundation a contractual right to purchase the Hospital's tangible assets because "there was neither a bona fide offer, nor a notice, both of which are preconditions" to that contractual right.

■ Although the evidence before the trial court was conflicting, it was for the trial court to resolve such conflicts in evidence. *In the Matter of Henry & Henry*, 163 N.H. 175, 181 (2012). As the fact finder, the trial court was entitled to accept or reject, in whole or in part, the testimony of any witness or party, and was not required to believe even uncontroverted evidence. *Id.*

■ We are not troubled by the fact that the trial court changed its view of Section 5.2.11(a) after the remedy proceeding. As the petitioners

acknowledge, "a trial court has some discretion in revisiting and revising its own prior orders." *See Radziewicz v. Town of Hudson*, 159 N.H. 313, 315 (2009) ("The trial court has the power to reconsider an issue until final judgment or decree."). The petitioners have neither argued nor demonstrated that the trial court exercised that discretion unsustainably. Because the trial court's interpretation of the ambiguous language in Section 5.2.11(a) is supported by the record and is not legally erroneous, we uphold it. *See Behrens*, 153 N.H. at 500-01.

### B. Foundation I

■ The Foundation argues that the trial court's interpretation of Section 5.2.11(a) contravenes the "law of the case." *See Saunders v. Town of Kingston*, 160 N.H. 560, 566 (2010) ("The question decided on the first appeal is known as the law of the case, and becomes binding precedent to be followed in successive stages of the same litigation." (quotation omitted)). The Foundation contends that *Foundation I* constitutes a "clear holding . . . that a third party sale was not required to trigger" the Foundation's right to purchase the Hospital. According to the Foundation, we held that it had a right to purchase the Hospital's tangible assets whenever a "Transfer" occurred. The Foundation is mistaken.

Our principal task in *Foundation I* was to determine whether, as the defendants argued, neither the 2006 nor the 1999 transaction constituted a "Transfer" within the meaning of Section 5.2.11(a). *See Foundation I*, 157 N.H. at 496-97. To decide this issue, we narrowly focused upon the following language in Section 5.2.11(a): "Neither HCA nor HCA-NH will directly or indirectly by merger or transfer of stock or otherwise sell, transfer, assign, or otherwise dispose of all or any substantial part of the assets of the Hospital (a 'Transfer')." Because we determined that the 2006 transaction was not a "Transfer" and because we left open the question of whether the 1999 transaction was a "Transfer," we did not answer the question raised in this appeal: whether a "Transfer" is the only condition precedent to the Foundation's right to purchase the Hospital.

In *Foundation I*, we first examined the transferors to whom Section 5.2.11(a) applies. We decided that the first part of Section 5.2.11(a) — "[n]either HCA nor HCA-NH" — meant that a "Transfer" had to be made by either HCA or HCA-NH. *Id.* at 494. The 2006 transaction was not a "Transfer" because HCA. Inc. was the transferor. *Id.* at 496-97. The 1999 transaction could be a "Transfer" because HCA was the transferor. *Id.* at 497.

Next, we analyzed whether a "Transfer" required only a direct transfer of the Hospital's assets. We concluded that the phrase "indirectly by merger or transfer of stock or otherwise" referred to indirect conveyances of the Hospital's assets. *Id.* at 500.

We then considered whether an inter-corporate transfer could be a "Transfer." *See id.* at 500-02. We did not reach any conclusions about this because we found the language "merger or transfer of stock or otherwise" to be ambiguous. *Id.* at 501. Contrary to the Foundation's assertions, we did not remand to the trial court solely to resolve this ambiguity. We vacated the trial court's dismissal of the Foundation's claims related to that transaction and remanded them in their entirety. To the extent that the Foundation contends that in *Foundation I* we decided that Section 5.2.11(a) was clear and unambiguous except for the single ambiguity we discussed, the Foundation is mistaken.

In this part of *Foundation I*, we did not consider whether an inter-corporate transfer necessarily afforded the Foundation a right to purchase the Hospital's tangible assets. Nor did we hold that upon any "Transfer," the Foundation would have a right to purchase the Hospital's tangible assets. Thus, we did not construe the language in Section 5.2.11(a) that is at issue in this appeal.

The Foundation's mistaken interpretation of our decision may stem from imprecise references. In *Foundation I*, we used the abbreviation "ROFR" to refer to Section 5.2.11(a) in its entirety *and* to the Foundation's contractual right to purchase the Hospital. *See id.* at 489. We were sometimes unclear as to when we intended "ROFR" to refer to Section 5.2.11(a) and when we intended "ROFR" to refer to the Foundation's right to purchase the Hospital. We also sometimes referred to events that "triggered" Section 5.2.11(a) and those that "triggered" the Foundation's right to purchase the Hospital as if those events were interchangeable, or as if "triggering" Section 5.2.11(a) was the same as "triggering" the Foundation's right to purchase. *See id.* at 496.

These imprecise references may have also caused the Foundation to conflate two issues in this case. The first is whether Section 5.2.11(a) pertains to the 1999 transaction at all — *i.e.*, whether the transfer from HCA to its corporate parent constituted a "Transfer." The second is whether even if the 1999 transaction constituted a "Transfer," it afforded the Foundation a right to purchase the Hospital's tangible assets. In *Foundation I*, we addressed only the first issue, which we did not decide because we found language in Section 5.2.11(a) to be ambiguous. We did not address the second issue.

We also did not address one of the defendants' arguments. The Foundation interprets our failure to address the argument as our rejection of it.

This is also incorrect. In *Foundation I*, as in this case, the defendants argued that the 1999 transaction did not afford the Foundation a contractual right to purchase the Hospital because it was not a transfer to a third party. Specifically, they asserted in *Foundation I* that "because neither the assets of the Hospital nor the stock of HCA-NH were transferred to a third party," there was no need for the court to decide whether the "wholly-owned subsidiary" exception to Section 5.2.11(a) applied. We focused upon the first part of this assertion — that "neither the assets of the Hospital nor the stock of HCA-NH were transferred" — and did not address the second part of the assertion — that there was no transfer "to a third party." *Id.* at 500-01. We decided that Section 5.2.11(a) was ambiguous as to whether it applied only when there was a merger or transfer of stock of HCA-NH, and as to whether the transfer could be to an upstream entity. *Id.* at 501. Accordingly, we never addressed the second part of the defendants' assertion — that the 1999 transaction did not afford the Foundation a right to purchase the Hospital because the transfer was not to a third party.

The Foundation relies upon other portions of the defendants' appellate briefs in *Foundation I* to intimate that they conceded that the Foundation had a contractual right to repurchase the Hospital's tangible assets whenever a "Transfer" occurred. We do not share the Foundation's interpretation of the defendants' prior arguments. Moreover, to the extent that the Foundation is attempting to invoke the doctrine of judicial estoppel, it has done so insufficiently to warrant review. *See Kilnwood on Kanasatka Condo. Unit Assoc. v. Smith*, 163 N.H. 751, 753 (2012).

## II. Remedies

Having upheld the trial court's construction of Section 5.2.11(a), we now address the remedies the trial court ordered or declined to order for the defendants' breach of that provision.

### A. Monetary Damages

We briefly discuss the Foundation's appellate claims related to monetary damages. The trial court declined to award such damages to the Foundation because it found that the Foundation's claimed damages "flowed from [the Foundation's] alleged lost opportunity to buy the hospital in 1999." The court reasoned that because the Foundation had no contractual right to purchase the Hospital that year, the Foundation "suffered no appreciable damages."

The Foundation does not contest that its claimed damages "flow[ ] from its alleged lost opportunity to buy the hospital in 1999." Instead, the Foundation faults the trial court for failing "to even consider what would

fairly compensate the Foundation for the lost opportunity to purchase the Hospital." Because the Foundation does not dispute, and indeed reaffirms, that its claim for monetary damages flows from the alleged lost opportunity, and because we have upheld the trial court's finding that there was no such lost opportunity, we necessarily also uphold its decision not to award the Foundation monetary damages.

## B. Equitable Remedies

■ We now turn to the parties' arguments regarding the trial court's award of equitable relief to the Foundation for the defendants' breach. "The propriety of affording equitable relief rests in the sound discretion of the trial court to be exercised according to the circumstances and exigencies of the case." *Livingston v. 18 Mile Point Drive*, 158 N.H. 619, 626 (2009) (quotation omitted). We will uphold a trial court's equitable order unless it constitutes an unsustainable exercise of discretion. *Id.*

The Foundation contends that the trial court erred when it failed to order specific performance of the Foundation's contractual right to purchase the Hospital. All of the Foundation's arguments related to specific performance assume that the Foundation had that contractual right. As previously discussed, the Foundation had no such right. Accordingly, the trial court did not err by failing to enforce it. Although the trial court, in an abundance of caution, analyzed, in the alternative, whether if the Foundation had a contractual right to purchase the Hospital, specifically enforcing it would be equitable, we see no need to conduct the same analysis. Therefore, we do not address the parties' arguments relative to the trial court's alternative analysis.

■ Moreover, contrary to the Foundation's assertions, the trial court *did* specifically enforce the parties' contract. The trial court ordered specific performance of the only contractual right the Foundation had — the right to preclude the 1999 transfer. By ordering HCA to "undo" the 1999 transaction so that the Hospital would be "in the same direct corporate chain that it was before the 1999 transfer," the court specifically enforced the part of Section 5.2.11(a) that precluded HCA from making the 1999 transfer in the first place. As the trial court aptly ruled, undoing "the 1999 transaction is equivalent to specific performance of the prohibition on transfers in [Section] 5.2.11(a)." *See id.* ("Generally, a decree of specific performance is intended to produce essentially the same effect as if the performance due under a contract were rendered." (quotation omitted)). Although the trial court referred to its remedy as "rescission," in fact, it was an order for specific performance.

The Foundation argues that the trial court's equitable remedy contravenes *Glick*, 157 N.H. at 250. In this argument, the Foundation merely repeats its assertion that it had a contractual right to purchase the Hospital, which the trial court should have specifically enforced. The Foundation's reliance upon *Glick* is misplaced because the plaintiff in *Glick*, unlike the Foundation, did have a contractual right to purchase the property at issue. *See Glick*, 157 N.H. at 246-47, 250.

## C. Attorney's Fees

### 1. Overview

We turn next to the parties' arguments regarding the attorney's fee award. The defendants point out that the trial court awarded fees because it found that their breach of the Agreement was "material." They contend that because their breach was not material, the fee award was error. The Foundation counters that the breach was, in fact, material and entitled the Foundation to an award of fees related to the remedy phase. Because the trial court's post-liability factual findings demonstrate that the breach was not material as a matter of law, we conclude that the trial court erred by awarding fees on that basis. Therefore, we reverse its attorney's fee award.

### 2. Discussion

#### a. Factual Background

Section 6 of the Agreement, as modified in 1994, allows the Foundation to bring a suit in equity or an action at law against the defendants only in the event of a material breach of the Agreement. In the liability proceeding, the trial court found that the defendants' breach was material and made factual findings to support that determination.

However, in January 2011, long after the liability proceeding but before the remedy proceeding, the trial court made additional findings and rulings that contradicted its liability findings and rulings. For instance, in the liability proceeding, the court found that the 1999 transaction "eroded the security that the [Foundation] had developed with HCA. Thus the 1999 transfer by HCA of its stock to Healthtrust was a material breach of the [Agreement]." By contrast, in its January 2011 order, the court found that the 1999 corporate restructuring "had absolutely no demonstrable effect on the things which [the Foundation] has always contended were key in their business relationship, to wit, the trust in the people that remained in control and [HCA's] continued obligation to follow the operating dictates . . . set forth in the . . . Agreement." The court further found that "the best evidence that no aspect of the corporate restructuring in 1999

negatively affected the [Foundation's] trust in [HCA] or the continued accepted operation of the hospital is the fact that the [Foundation] did not even learn about the 1999 transaction until many years later."

Similarly, in the liability proceedings, the court found the effect of the 1999 transfer was to change "the ultimate ownership of the . . . Hospital such that HCA both in a legal and real sense no longer controlled [its] operation." However, in its January 2011 order, the court found, "Not one physical change occurred at the hospital as a result of the corporate restructuring." It also found, "The people and procedures in place before the restructuring were exactly the same as the people and policies in place after the restructuring."

In the remedy proceeding, the trial court again made factual findings that contradicted those it made in the liability proceeding. For instance, in the liability proceeding, the trial court expressly rejected the defendants' assertion that the 1999 transaction was simply an internal restructuring done solely for tax purposes. By contrast, in the remedy proceeding, the trial court found that "[t]he 1999 transaction was an internal restructuring between intermediate holding companies with no operations or employees, undertaken solely for tax purposes," and that any resulting breach of the Agreement "was inadvertent and unintentional." It further found that "[t]he 1999 transaction did not impact the Hospital in any way," and that "[n]othing changed at the Hospital as a result of the . . . transaction because HCA operates and manages its Hospitals through its divisional structure not through its legal structure of holding companies, and the 1999 transaction had no effect on HCA's divisional structure." Additionally, it found that "the inter-company transfer in 1999 had no practical effect on the operation of the hospital as the [Foundation] did not even know about it until this litigation began in 2006." The trial court also found that "[b]ecause the 1999 transaction did not give rise to an opportunity to repurchase the Hospital, the Foundation accordingly suffered no injury as a result of the 1999 transaction." Recognizing that its remedy proceeding findings conflicted with its liability proceeding findings, the court stated that its remedy findings took precedence over its liability findings.

### b. Analysis

The trial court's post-liability findings establish that the defendants' breach was not material as a matter of law.

Whether a breach of contract is material is a question of fact, and we will uphold the trial court's findings of fact and rulings of law unless they lack evidentiary support or constitute a clear error of law. *Ellis v. Candia Trailers & Snow Equip.*, 164 N.H. 457, 466 (2012). "[F]or a breach of contract to be material, it must go to the root or essence of the agreement

between the parties, or be one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract." *Id.* at 467 (quotations omitted). A breach is "material" if: (1) "a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions"; (2) "the breach substantially defeats the contract's purpose"; or (3) "the breach is such that upon a reasonable interpretation of the contract, the parties considered the breach as vital to the existence of the contract." *Id.* (quotations and emphases omitted); *see* 23 WILLISTON ON CONTRACTS § 63:3, at 438-39 (4th ed. 2002). Although the absence of proof of damages is not dispositive of whether a breach is material, *Ellis,* 164 N.H. at 467, "where a breach causes no damages or prejudice to the other party, it may be deemed not to be 'material.'" WILLISTON, *supra* at 439-40; *see Miami Subs Corp. v. Murray Family Trust and Kenneth Dash Partnership,* 142 N.H. 501, 511 (1997) (breach is not material when breachee suffered no damages as a result); *cf. Dover Mills Partnership v. Comm. Union Ins. Cos.,* 144 N.H. 336, 339 (1999) (Prejudice "is central to a determination of whether . . . lack of notice constitutes a material breach of [an] insurance contract.").

Here, the trial court originally found that the breach was material because it went to the essential purpose of the Agreement, which the court decided concerned trust. As explained above, however, in its later orders, the trial court found that the 1999 transaction did not defeat that essential purpose, and that the 1999 transaction caused no injury to the Foundation. Although the Foundation argues that the breach was material because it deprived the Foundation of an opportunity to purchase the Hospital, the trial court specifically rejected this argument in its post-liability orders.

 The trial court's post-liability findings, which took precedence over its earlier findings, demonstrate that the defendants' breach was not material. Accordingly, the trial court erred by awarding attorney's fees to the Foundation on that basis. In light of our decision, we need not address the Foundation's assertion that the defendants' material breach also entitled the Foundation to an award of attorney's fees for the remedy phase.

Although, arguably, the Foundation was not entitled to *any* remedy given that the defendants' breach was not material as a matter of law, we do not disturb the trial court's grant of equitable relief to the Foundation because the defendants have not challenged that remedy in their cross-appeal.

We have reviewed the Foundation's remaining arguments and conclude that they do not warrant extended consideration. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed in part and reversed in part.*

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.