NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
Case No. 2022-0562
Citation: Wescott v. Warden, N.H. State Prison, 2024 N.H. 56


RICHARD R. WESCOTT

v.

WARDEN, NEW HAMPSHIRE STATE PRISON


Submitted: October 3, 2023
Opinion Issued: October 11, 2024


Richard R. Wescott, self-represented party, on the brief.

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Brendan A. O'Donnell, assistant attorney general, on the brief), for the Warden, New Hampshire State Prison.

New Hampshire Legal Assistance, of Portsmouth (Kay E. Drought on the brief), as amicus curiae.

COUNTWAY, J.

[¶1] The plaintiff, Richard R. Wescott, appeals a decision of the Superior Court (Kissinger, J.) dismissing his complaint for breach of contract against the defendant, Warden, New Hampshire State Prison. The plaintiff's complaint alleged that the defendant breached the terms of the Laaman Settlement Agreement (Agreement). The Agreement had resolved a federal class action lawsuit that sought to remedy conditions at the New Hampshire State Prison for Men (prison). See generally Laaman v. Helgemoe, 437 F. Supp. 269 (D.N.H. 1977); Laaman v. Warden, New Hampshire State Prison, 238 F.3d 14 (1st Cir. 2001). We affirm.

[¶2] The following facts are derived from the plaintiff's complaint, which we accept as true, or from documents sufficiently referred to by the complaint and whose authenticity no party disputes. See Beane v. Dana S. Beane & Co., 160 N.H. 708, 711-12 (2010). The plaintiff, who began his incarceration at the prison in 1998, filed a 107-page complaint seeking to enforce the Agreement, which is comprised of the terms of a modified consent decree. See Avery v. Comm'r, N.H. Dep't of Corr., 173 N.H. 726, 729 (2020). The underlying consent decree was issued in August 1978, a little over a year after the federal district court had issued "an extensive opinion" finding that conditions at the prison subjected inmates to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. See Laaman, 238 F.3d at 15. The consent decree was modified multiple times until 2001, when the parties reached a final settlement to resolve the class action lawsuit and the federal district court terminated federal jurisdiction over the matter. Avery, 173 N.H. at 729. The 1978 consent decree and its modified versions comprise the Laaman Settlement Agreement, which requires that inmates receive certain services, including mental health treatment. See id. The plaintiff's complaint alleges that the defendant breached the Agreement by failing to provide him with sufficient mental health treatment.

[¶3] The majority of the plaintiff's requests for relief relate to the plaintiff individually. Other claims raised by the plaintiff relate to the alleged failure of the Department of Corrections to comply with certain specific mandates of the Agreement and could be read to suggest that the plaintiff purports to represent the Laaman class plaintiffs. However, both in pleadings filed with the trial court and in his brief, the plaintiff disclaimed any intention of doing so. The plaintiff states in his brief that "it was never his intent to try and litigate a class action," and that he "ensure[d] on the record that he was not representing a class of inmates."

[¶4] The Warden moved to dismiss the plaintiff's complaint on three grounds: (1) the plaintiff was not a party to the Agreement; (2) the Agreement limits the right to enforce it to "only the named Laaman plaintiffs through class counsel"; and (3) the plaintiff cannot bring an action on behalf of the entire

Laaman class. The trial court granted the Warden's motion to dismiss in a margin order "for the reasons set out in the motion." The plaintiff moved for reconsideration, which the court denied. This appeal followed.

[¶5] When reviewing a trial court's decision to grant a motion to dismiss, we examine whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery. Doe v. Attorney General, 175 N.H. 349, 352 (2022). We assume the facts alleged in the plaintiff's pleadings to be true and construe all reasonable inferences in the light most favorable to the plaintiff. Id. We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law, and if the allegations do not constitute a basis for legal relief, we must affirm the grant of the motion to dismiss. Id.

[¶6] The plaintiff contends that, because he is an inmate of the prison, he can sue to enforce the Agreement. The Warden responds that the Agreement does not provide every inmate an individual breach of contract claim to challenge the day-to-day operations at the prison. Because the plaintiff has disclaimed any intention of representing the Laaman class plaintiffs, we address only whether the terms of the Agreement allow an individual inmate to enforce it through an individual breach of contract claim, and conclude that it does not.

[¶7] Settlement agreements are contractual in nature and, therefore, are generally governed by principles of contract law. Avery, 173 N.H. at 738. As a general rule, only the parties to a contract have a remedy for breach of the contract. See Arlington Trust Co. v. Estate of Wood, 123 N.H. 765, 767 (1983). Third-party beneficiaries to a contract, however, can also sue to enforce a contract where the parties to the contract intended them to have that right. Brooks v. Trustees of Dartmouth College, 161 N.H. 685, 698 (2011). In such cases, the contract must show "'that the parties considered the third party's legal status and intended to confer upon him a right to sue the promisor.'" Id. (quoting Paglin, Criteria for Recognition of Third Party Beneficiaries' Rights, 24 New Eng. L. Rev. 63, 69 (1989)). Accordingly, to enforce the Agreement, at a minimum the plaintiff must be either a party to, or an intended beneficiary of, the Agreement. See id.; Arlington Trust Co., 123 N.H. at 767. Resolution of these issues requires us to interpret the Agreement.

[¶8] When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole. Found. for Seacoast Health v. Hosp. Corp. of America, 165 N.H. 168, 172 (2013). Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the contract. Id. The interpretation of unambiguous contractual language is a question of law, which we review de

3

novo.  Id.  The determination of whether contractual language is ambiguous is also a question of law subject to de novo review.  Id.

[¶9] The Agreement is comprised of the 1978 consent decree resolving the federal class action lawsuit and modifications to that consent decree.  See Avery, 173 N.H. at 729.  Those modifications include: (1) a 1990 modification which deleted and replaced six sections of the 1978 consent decree; (2) a 1994 stipulation of settlement of vocational training issues; (3) a 2001 settlement agreement modifying the 1990 agreement, relating primarily to the provision of mental health services, and terminating federal jurisdiction over the matter; and (4) a 2003 amended settlement agreement concerning the New Hampshire Special Housing Unit.

[¶10] Because the 1978 consent decree serves as the basis of the Agreement, we begin with the language of that document.  One provision of the 1978 consent decree addresses to whom it will apply:

> 8. This Consent Decree shall be applicable to members of the class comprised of all inmates who are or will be incarcerated as duly convicted felons at New Hampshire State Prison and are or will be in the custody of the Warden or any other person or agency who in the future may receive custody of any such inmates in lieu of the Warden including but not limited to, inmates on work release, in quarantine, punitive segregation, protective custody, trusty status, and any category of inmates delineated in Appendix B, which is the prison's Classification Manual, and which is incorporated in this decree, infra.

(Emphasis added).  Another provision of the 1978 consent decree details the process to be followed to enforce the Agreement:

> 9. In entering into this Consent Decree plaintiffs and defendants have acknowledged that it is not their intention to provide an extraordinary avenue of access to the courts to bring minute details of the New Hampshire State Prison's day-to-day operations to the courts' constant attention.  The parties acknowledge that the size of the prison staff alone and the nature of its operations may lead to minor and isolated instances of noncompliance with provisions of this Consent Decree which may be speedily resolved if brought to the attention of the administration.  Accordingly, the parties acknowledge that a spirit of reasonableness and cooperation should govern resolution of grievances arising under this Consent Decree.  The named Plaintiffs and their counsel agree to consult, where possible, with the Office of the Attorney General or the administration of the New Hampshire State Prison when a report of noncompliance comes to their attention, to allow the

4

institution to either remedy the problem to the Plaintiffs' satisfaction or to indicate disagreement with the report, prior to instigating litigation.

(Emphasis added). The 1990 modified decree includes almost identical language. See May 22, 1990 modified federal consent decree ¶¶ 7, 8. The 2001 settlement agreement includes similar language:

> The parties acknowledge that a spirit of reasonableness and cooperation should govern resolution of grievances arising under this settlement agreement. The named plaintiffs and their counsel agree to consult, where possible in the first instance, with the Commissioner of the Department of Corrections and, thereafter, with the Office of the Attorney General if a problem of noncompliance comes to their attention, and to allow the institution a reasonable amount of time to either remedy the problem to the plaintiffs' satisfaction or to indicate disagreement with the alleged problem, prior to initiating litigation.

(Emphasis added).

[¶11] We conclude that the language of the relevant provisions is ambiguous regarding whether the signatories to the Agreement intended to confer upon the plaintiff the right to sue individually to enforce it. See Brooks, 161 N.H. at 698. Ambiguity exists when a reasonable disagreement as to the meaning of the contract's language exists. See Greenhalgh v. Presstek, 152 N.H. 695, 698 (2005). Here, a reasonable disagreement exists. Paragraph 8 of the 1978 consent decree states that it applies "to members of the class comprised of all inmates who are or will be incarcerated as duly convicted felons at New Hampshire State Prison." Because the Agreement applies to the plaintiff, it could be argued that he can sue under it individually as either a party or as an intended beneficiary. But Paragraph 9 of the 1978 consent decree, the 1990 modified consent decree, and the 2001 settlement agreement specify that "[t]he named Plaintiffs and their counsel" will sue if their concerns cannot be resolved informally. This language limits the right to sue to the named plaintiffs only and suggests that the action would have to be brought as a class action, a restriction that conflicts with a broad reading of paragraph 8. Accordingly, the Agreement is ambiguous regarding whether an individual inmate who is not a named plaintiff can sue individually to enforce it.

[¶12] Because the language of the Agreement is ambiguous, we consider, under an objective standard, what the parties, as reasonable people, understood the language to mean. See Birch Broad. v. Capitol Broad. Corp., 161 N.H. 192, 196 (2010). In doing so, we examine the contract as a whole, the circumstances surrounding its execution, and the object intended by the Agreement, while keeping in mind the goal of giving effect to the intentions of

5

the parties.  Id. at 196-97.  Although this analysis typically requires factual findings, id. at 197, we can resolve an ambiguity as a matter of law when it implicates a pure interpretive question.  See Sunapee Difference v. State of N.H., 164 N.H. 778, 790-91 (2013) (determining that when an ambiguous contract term implicated a statute, we can resolve it as a matter of law).  Here, the ambiguity involves a pure interpretive question because the circumstances surrounding the Agreement's execution and object intended by it are undisputed.  See 11 Richard A. Lord, Williston on Contracts § 30:7, at 127 (4th ed. 2012) (determining that a court can interpret an ambiguous contract so long as the contract's extrinsic evidence is undisputed).  Thus, we can resolve this ambiguity as a matter of law.  See id.; Sunapee Difference, 164 N.H. at 790.

[¶13] The underlying federal litigation began in 1975 when plaintiff Laaman brought an action alleging that the defendants' "emergency lockup of the prison" violated his constitutional rights.  See Laaman, 437 F. Supp. at 275.  "The court appointed counsel and the case mushroomed into a broad-based attack on the general living conditions at the prison."  Id.  Laaman's case was consolidated with other pending cases into a single class action.  Id.  On July 1, 1977 an order issued stating that the action had been "brought by twelve named inmates on behalf of all persons who are or will be incarcerated as duly convicted felons at the prison."  Id. at 275.  The order made detailed factual findings, required specific improvements in programs, services and facilities at the prison, and required the defendants to submit a detailed plan for implementing the requirements of the order.  Id. at 275-331.  The consent decree resolving the original litigation and later settlement agreements included specific requirements designed to address prison conditions.  Together these documents sought to create long-lasting changes for current and future inmates, and made fundamental changes to the conditions of confinement to improve prison conditions for all inmates.  Laaman, 238 F.3d at 15 (stating that the consent decree implemented the required relief to improve the prison's conditions); see also 1 William B. Rubenstein, Newberg on Class Actions §§ 1:1, 1:5, 1:6, at 2-3, 12-14, 16-17 (5th ed. 2011); 8 Alba Conte & Herbert Newberg, Newberg on Class Actions §§ 25:1, 25:35, at 520-21, 615-16 (4th ed. 2002).  Together, the whole of the contract and the circumstances surrounding its execution make clear that, even assuming without deciding that the plaintiff is a party or an intended third-party beneficiary of the Agreement, he does not have an individual right to sue to enforce the Agreement.

[¶14] We agree with the Warden that it is clear from the language of the Agreement, considered in the context of the circumstances surrounding its execution, that the parties did not intend to confer upon individual future inmates the right to sue individually to enforce the Agreement.  Paragraph 9 of the Agreement provides that "plaintiffs and defendants have acknowledged that it is not their intention to provide an extraordinary avenue of access to the courts to bring minute details of the New Hampshire State Prison's day-to-day

operations to the courts' constant attention," and provides a right to enforce it to "named Plaintiffs and their counsel."  This language indicates that the parties intended that the Agreement would be enforced only by a plaintiff representing the entire plaintiff class, not by any individual inmate who is merely a member of the plaintiff class.  The circumstances surrounding the Agreement's execution support this interpretation.  As we have noted, although the underlying litigation was initiated by an individual plaintiff, the lawsuit ultimately proceeded as a class action that aimed to improve conditions for all inmates.  The plaintiffs negotiated the Agreement as a class, and the Agreement applies to them as a class.  It follows that they must sue as a class to enforce it.

[¶15] We find additional support for the conclusion that the contracting parties understood that an action to enforce must be brought by a person or persons representing the class when we consider the language of the Agreement in light of the rules that governed the underlying federal litigation.  Paragraph 9 of the 1978 consent decree, the 1990 modified consent decree, and the 2001 settlement agreement all specify that "[t]he named Plaintiffs <u>and their counsel</u>" will sue if their concerns cannot be resolved.  (Emphasis added.)  It was not until 2003 that Federal Rule of Civil Procedure 23 was amended to explicitly require that class counsel be appointed if a class is certified.  <u>See</u> <u>Fed. R. Civ. P</u>. 23(g)(1) advisory committee note to 2003 amendment.  However, in 1978, when the parties agreed to the consent decree, Rule 23(a) provided that a class action could be maintained only if, among other things, "the representative parties will fairly and adequately protect the interests of the class." 28 U.S.C. app. Fed. R. Civ. Pr. 23(a) (1976) (amended 2003), and courts used this rule "as an invitation to scrutinize the adequacy of class <u>counsel</u> as well as the adequacy of the class <u>representatives</u>."  1 William B. Rubenstein, <u>Newberg on Class Actions</u> § 3.52 at 325-26 (5th ed. 2011).  In light of this reference to class counsel, we conclude that the language in paragraph 9 providing a right to enforce the Agreement to "named Plaintiffs and their counsel" reflects the parties' understanding that an action to enforce the Agreement would have to be brought by counsel representing the class of plaintiffs.  It therefore stands to reason that the contracting parties did not agree that individual inmates could sue to enforce the Agreement; rather, they agreed that any action to enforce would have to be brought as a class action.[1]

---

[1] Because the plaintiff in this case has disclaimed any interest in representing a class of plaintiffs, we do not reach the questions of whether the Agreement would require the appointment of counsel if an inmate sought to represent the class, or whether an inmate could bring a class action to enforce the Agreement without having counsel.  As the opinion notes, Federal Rule of Civil Procedure 23 requires a court certifying a class to appoint counsel.  New Hampshire Superior Court Rule 16 ("Class Actions") has no such requirement.

7

[¶16] We have considered the plaintiff's remaining arguments, and have concluded that they do not warrant further discussion.  See Vogel v. Vogel, 137 N.H. 321, 322 (1993).  Accordingly, we affirm the dismissal by the trial court.

Affirmed.

BASSETT and DONOVAN, JJ., concurred; HANTZ MARCONI, J., did not participate in the final vote.